UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS STAVRINIDES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>VIN DI BONA, et al.,<br><br>    Defendants. | Case No. 17-cv-05742-WHO<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 12 |

## INTRODUCTION

Plaintiffs Elias and Kristi Stavrinides allege that Mrs. Stavrinides entered into and subsequently rescinded two contracts with defendants Cara Communications Corporation and Vin Di Bona, producers of "America's Funniest Home Video," granting defendants exclusive use of two video clips. Plaintiffs later discovered that defendants were willfully and intentionally using plaintiffs' video clips, and now bring suit for copyright infringement, unfair business practices under the California Unfair Competition Law, entitlement to an accounting, and declaratory relief. Defendants move to transfer venue of this case to the Central District of California pursuant to a forum selection clause in the contracts. Defendants separately move to dismiss all claims against them. For the reasons stated below, I GRANT defendants' motion to transfer venue and do not reach defendants' motion to dismiss.

## BACKGROUND

Plaintiffs, a married couple, jointly created two video clips. *See* Compl. ¶¶ 3–4, 8. Mrs. Stavrinides submitted these two clips to America's Funniest Home Video, a television program produced by defendants, and subsequently signed several forms, including "America's Funniest Home Videos – Home Video Description Form," and "Home Video Exclusive Grant of Rights, Appearance and Shooter Release," on July 5 and 6, 2016. *Id.* ¶ 9; Compl. Exs. A & B. Mrs.

Stavrinides alleges that the words on the form were too small for her to read. Compl. ¶ 10. On those forms, Mrs. Stavrinides represents that she is both the owner and shooter of each video clip. *See* Compl. Exs. A & B, at 1. The forms contain a forum selection clause, mandating that any action arising from or related to the agreements be litigated in the County of Los Angeles. *Id.* at 6.

Mr. Stavrinides, however, did not want to be on the America's Funniest Home Video show. Compl. ¶ 11. On July 9, 2016, Mrs. Stavrinides sent to Cara Communications Corporation via certified mail two letters purporting to cancel her authorization of the use of her video clips. Compl. Exs. C & D. Plaintiffs allege that defendants called plaintiffs on July 19, 2016, "attempt[ing] to get PLAINTIFFS to submit to the agreement and to talk ELIAS to agree to sign the shooter agreement." Compl. ¶ 13. Mr. Stavrinides did not give such consent and never signed any agreement with defendants. *Id.* ¶¶ 13, 16. Approximately one year later, in July of 2017, Mrs. Stavrinides' friend alerted her that one of her video clips appeared on America's Funniest Home Video's Facebook page. *Id.* ¶ 17. Plaintiffs now bring suit for injunctive relief and damages asserting copyright infringement, unfair business practices, entitlement to an accounting, and declaratory relief.

## LEGAL STANDARD

A court may transfer an action to another district "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The purpose of this section is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotations omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

When a case concerns enforcement of a forum selection clause, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013) (internal quotation marks omitted). Plaintiffs bear the burden of showing that exceptional circumstances make transfer inappropriate. *Id.* at 581. Plaintiffs must show either

2

that the forum selection clause is not valid or that the public interest factors recognized under Section 1404(a) make transfer inappropriate. *Id.* at 579, 582; *see also Bayol v. Zipcar, Inc.*, No. 14-cv-02483-TEH, 2014 WL 4793935, at *1 (N.D.Cal. Sept. 25, 2014).

## DISCUSSION

### I. Whether Plaintiffs' Untimely Opposition Should Be Disregarded

Defendants argue in reply that plaintiffs' opposition brief should be disregarded because it was due on December 18, 2017, pursuant to the local rules, but plaintiffs did not email it to defendants until December 25, 2017, and did not file it until December 28, 2017. *See* Pls.' Opp. [Dkt. No. 17]; Defs.' Rep. [Dkt. No. 21] at 1–2. Plaintiffs' opposition brief was thus filed ten days late, with the explanation only that plaintiffs "were in the middle of and affected by the North Bay Fires." Pls.' Opp. to Mot. to Transfer Venue at 1. It is unclear what exactly plaintiffs mean by this statement, given that the recent fires have been contained since October, but I will nonetheless accept their untimely oppositions. In the Ninth Circuit, "[p]ublic policy favors disposition of cases on the merits," *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). Defendants' representations about plaintiffs' failure to follow the local rules in other cases are not pertinent to the matters at issue in this motion.

### II. Motion to Transfer Venue

#### A. Whether the Contracts' Forum Selection Clause Applies

The contractual agreements at issue each contain a forum selection clause, selecting "the federal and state courts of the State of California located in the County of Los Angeles" for "any lawsuit, action or proceeding arising out of or related to this agreement, the use of the Video, and/or to any rights granted hereunder." Compl. Exs. A & B, at 6. While plaintiffs do not dispute the validity of the contracts' forum selection clause, they appear to argue that Mrs. Stavrinides cancelled the contracts and therefore should not be subject to their terms. Plaintiffs also argue that transfer is inappropriate because it is not convenient for plaintiffs, nor in the interest of justice. I will address each of these arguments.

##### 1. Whether Plaintiffs Cancelled the Contracts

California Civil Code Section 1689 governs rescission of a contract under California law.

3

Under this provision, a party to a contract may unilaterally rescind the contract only under certain enumerated circumstances, including "[i]f the consent of the party rescinding . . . was given by mistake, or obtained through duress, menace, fraud, or undue influence." Cal. Civ. Code § 1689(b)(1). A mistake of fact is defined as a "mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in" either "[a]n unconscious ignorance or forgetfulness of a fact past or present," or "[b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Cal. Civ. Code § 1577. "A unilateral misinterpretation of contractual terms, without knowledge by the other party at the time of contract, does not constitute a mistake." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 279 (2001). The California Supreme Court authorizes rescission of a contract on the ground of unilateral mistake of fact only where enforcement would be unconscionable. *Donovan*, 26 Cal. 4th at 281.

Plaintiffs do not dispute that Kristi Stavrinides entered into two contractual agreements with defendants when she submitted two video clips to defendants and signed certain forms forming the parties' agreement on July 5 and July 6, 2016. *See* Compl. ¶¶ 9–10. Mrs. Stavrinides represented on these forms that she was both the owner and the shooter of the video clips. *See* Compl. Exs. A & B, at 1. Plaintiffs allege that they cancelled those agreements, however, when they sent via certified mail two letters purporting to "remove [Mrs. Stavrinides'] signature issued by mistake and inadvertence," and revoking use of the video clips on July 9, 2016. *See* Compl. Exs. C & D. In those letters, Mrs. Stavrinides writes that she submitted the video clips "by mistake, inadvertence, and not knowing what I was doing or agreeing to with your electronic contract. I am not an attorney nor did I print out and read what your contract stated and further did not understand what I was doing. Also, another person shot the video and I do not have their permission for use of this video." *Id.*

Construing the allegations in the light most favorable to plaintiffs, they plead two theories of mistake: first, that Mrs. Stavrinides signed the contracts by mistake without understanding its terms, and second, that Mrs. Stavrinides mistakenly signed the contracts without Mr. Stavrinides' permission. Neither of these constitutes a mistake within the meaning of Section 1577. California

4

law is clear that "[a] unilateral misinterpretation of contract terms . . . does not constitute a mistake." *Donovan*, 26 Cal. 4th at 279. Nor does the fact that Mrs. Stavrinides did not have Mr. Stavrinides' permission establish a mistake, as she also owned the video clips and had the power to grant exclusive rights to their use. She did not discover any new facts after signing the contracts that she did not have when she signed them; she knew at the time that she signed the contracts that she jointly owned the video clips with Mr. Stavrinides. *See* Compl. ¶¶ 8–10; Compl. Exs. A & B.

Even if plaintiffs could establish a mistake of fact, their argument would still fail because they cannot establish that enforcement of the contracts would be unconscionable as a matter of law. They do not address unconscionability in the briefing, but upon review of the allegations in the Complaint and the attached exhibits, I have no trouble concluding that enforcement of the contract is neither oppressive nor overly harsh such that it is unconscionable. *See Donovan*, 26 Cal. 4th at 291. For these reasons, Mrs. Stavrinides could not unilaterally rescind the contracts and is therefore subject to their terms, including the forum selection clause.

### 2. Whether Mr. Stavrinides May Be Bound by the Forum Selection Clause

While Mrs. Stavrinides is clearly subject to the forum selection clause, Mr. Stavrinides was not party to the contracts nor their terms. The Ninth Circuit has stated, however, that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). It has thus found that where "the alleged conduct of the non-parties is so closely related to the contractual relationship," "the forum selection clause applies to all defendants." *Id.*; *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F. 3d 450, 456 (9th Cir. 2007) (applying forum selection clause equally to non-parties because their "alleged conduct . . . [wa]s tied to [the] contract").

Mr. Stavrinides's claims and alleged damages are closely related to the contractual relationship in dispute in this case. Indeed, it is the same transactions and events—namely, the creation of and then the attempted rescission of the same two contracts—that give rise to all of plaintiffs' claims, and Mr. Stavrinides's claims are identical to Mrs. Stavrinides's claims and

proceed on the same theories. *See, e.g.*, *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015) (applying forum selection clause to "sister corporations of a party to an agreement where their alleged liability was closely related to the contractual relationship"); *Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, No. C 14-3073 PJH, 2014 WL 12691050, at *5 (N.D. Cal. Oct. 31, 2014) (applying forum selection clause because resolution of non-party's tort claims "plainly related to interpretation of the contract" at issue and therefore were "closely related" to the contractual relationship). Because Mr. Stavrinides's claims are so "closely related" to Mrs. Stavrinides's, he is also bound by the forum selection clause.

### 3. Whether the Forum Selection Clause Should Be Enforced

Given that the contracts contain valid forum selection clauses, they must be enforced unless plaintiffs are capable of showing extraordinary circumstances. In evaluating such circumstances, "plaintiff's choice of forum merits no weight," and I "should not consider arguments about the parties' private interests." *Atl. Marine*, 134 S. Ct. at 582. Instead, only the public interest factors are relevant, including "the administrative difficulties flowing from court congestion"; "the local interest in having localized controversies decided at home"; "the interest in having the trial in a diversity case in a forum that is at home with the law that must govern the action"; "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law"; and "the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotation marks omitted). "[P]ublic-interest factors will rarely defeat a transfer motion," *Atl. Marine*, 134 S. Ct. at 582, and this case is no exception. While two of these factors have no bearing on the analysis because the case does not arise under diversity jurisdiction nor is there any conflict of laws, the remaining three factors each weigh in favor of transferring venue to the Central District of California. Plaintiffs' argument that the current forum is more convenient merits no weight in this evaluation, nor do plaintiffs explain why transfer of the case would not be in the interest of justice. For these reasons, I GRANT defendants' motion to transfer venue to the Central District of California.

**CONCLUSION**

I GRANT defendants' motion to transfer venue of this case to the Central District of California. I do not reach defendants' motion to dismiss because the parties agreed that the case would be decided in federal or state court in the County of Los Angeles.

**IT IS SO ORDERED.**

Dated: January 8, 2018

William H. Orrick
United States District Judge